UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTIN A. MOCK,

        Plaintiff,

                                          File No.  1:05-CV-582

v.

                                          HON. ROBERT HOLMES BELL

UNITED PARCEL SERVICE, INC.,
an Ohio corporation,

        Defendant.
                                          /

## **O P I N I O N**

Plaintiff Martin A. Mock filed this action against Defendant United Parcel Service, Inc. ("UPS"), his former employer, alleging that he was discharged from his employment without just cause, in violation of his collective bargaining agreement. This matter is before the Court on Defendant's motion to dismiss or alternatively for summary judgment. For the reasons stated below, Defendant's motion will be granted.

**I.**

This is the second of two suits Plaintiff has filed relating to his discharge. Plaintiff's first suit, which alleged wrongful discharge, age discrimination, and sex discrimination, was filed in state court on June 7, 2004, and was removed to this Court. By opinion and order dated November 18, 2005, this Court entered summary judgment in favor of Defendant UPS and dismissed the case. *Mock v. United Parcel Service (Mock I)*, No. 5: 04-CV-96 (W.D.

Mich. Nov. 18, 2005).  Plaintiff's second suit, which was filed in this Court on August 30, 2005, alleges wrongful discharge in breach of the collective bargaining agreement.

The relevant facts are discussed in detail in this Court's opinion dismissing Plaintiff's first suit.  For purposes of this motion the Court will summarize the relevant facts which are not in dispute.

Plaintiff was employed by UPS from April 9, 1984, to January 30, 2004, as a truck driver and delivery person. Plaintiff was a member of the International Brotherhood of Teamsters ("Union").  His employment was subject to the terms of a collective bargaining agreement ("CBA").  Article 17 of the CBA governs discharge or suspension.  Article 17 permits immediate suspension or discharge for eight enumerated offenses and "(i) other serious offenses."

UPS has a Professional Conduct and Anti-Harassment Policy ("Anti-Harassment Policy") which "prohibits unprofessional and discourteous actions, even if those actions do not constitute unlawful harassment."[1]  The policy provides that UPS "will take immediate and

---

[1]The Anti-Harassment Policy, which was adopted in September 2000, provides in pertinent part:

> [H]arassment of any person or group of persons on the basis of race, sex, national origin, disability, sexual orientation, age or religion is a form of unlawful discrimination which is specifically prohibited in the UPS community and which may subject the company and/or the individual harasser to liability. Accordingly, derogatory or other inappropriate remarks, slurs, threats or jokes will not be tolerated. Similarly, inappropriate visual and non-verbal objects or conduct are unacceptable and will not be tolerated.  Likewise, inappropriate physical contact will not be allowed in our workplace.  In other words, UPS will not tolerate harassment of any employee by anyone for any reason.

(Def. Ex. 6).

2

appropriate corrective action whenever it determines that harassment has occurred," and that "[a]ny employee who violates this policy may be subject to termination or other disciplinary action."

On January 27, 2004, Plaintiff entered the men's restroom at his place of employment while Diana Sitko, a female porter or custodian, was cleaning the restroom. Sitko complained to her supervisors that Plaintiff used or appeared to use the urinal while she was still in the restroom and that she felt humiliated by his actions.

By letter dated February 3, 2004, UPS gave Plaintiff written notice that he was terminated from his employment. The letter stated:

> This letter is to serve as the official notification that your employment with United Parcel Service was terminated effective January 30, 2004.
>
> The reason for your termination is in accordance with Article 17, Section (i), other serious offenses, of the CRT Supplemental Agreement. Specifically, violation of the UPS professional conduct and anti-harassment policy.

(Def. Ex. 4, UPS letter of 2/3/04).

Plaintiff initiated a grievance through his Union denying that he had engaged in any unprofessional or discourteous conduct and requesting reinstatement. A local hearing was held on Plaintiff's grievance on February 6, 2004, at which time both Plaintiff and Sitko presented their sides of the story. The result of the local hearing was not favorable to Plaintiff. Accordingly, Plaintiff, through his Union, appealed. A hearing before the state panel was conducted on February 19, 2004. At the conclusion of the hearing the State Panel denied Plaintiff's grievance.

Defendant has filed a motion to dismiss, or, alternatively, for summary judgment, on multiple grounds, including failure to allege or establish a breach of the duty of fair representation, failure to allege or establish a breach of the CBA, the res judicata effect of *Mock I*, the bar posed by the six-month statute of limitations that applies to hybrid § 301 claims, failure to exhaust internal Union appeals procedures, and improper circumvention of the *Mock I* case management order.

**II.**

An action may be dismissed pursuant to Rule 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Dismissal of a complaint pursuant to Rule 12(b)(6) is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003); *Goad v. Mitchell*, 297 F.3d 497, 500 (6th Cir. 2002).

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If defendant carries its burden of showing there is an absence of evidence to support a claim then plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a

genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

### III.

In his complaint Plaintiff alleges breach of a collective bargaining agreement falling under the Labor Management Relations Act, § 301.  (Compl. ¶ 1).  Plaintiff recognizes that an employee who is subject to a collective bargaining agreement "normally cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance." *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (citing *DelCostello v. Teamsters*, 462 U.S. 151, 163-64 (1983)).  This is so whether the employee sues both the labor union and the employer or only one of those entities. *Id.* (citing *DelCostello*, 462 U.S. at 164-65).

Plaintiff's burden in demonstrating his Union's breach of its duty of fair representation is a heavy one.  A union breaches its duty of fair representation only if its actions are "arbitrary, discriminatory, or in bad faith." *Air Line Pilots Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)).  "Each of these wrongs is mutually independent, meaning, that 'the three named factors are three separate and distinct possible routes by which a union may be found to have breached its duty.'" *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 584 (6th Cir. 1994)).  "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's

5

behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *Id.* (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998). A union acts arbitrarily only if "it handles a grievance in a 'perfunctory' manner, with caprice or without rational explanation." *Linton v. United Parcel Service*, 15 F.3d 1365, 1370 (6th Cir. 1994) (quoting *Poole v. Budd Co.*, 706 F.2d 181, 183-84 (6th Cir. 1983)). Ordinary negligence, mistake, error, or flaws in judgment by the union representative do not constitute a breach of the union's duty. *Poole v. Budd Co.*, 706 F.2d 181, 184 (6th Cir. 1983).

Plaintiff has not come forward with any evidence to suggest that the Union's representation of him was arbitrary, discriminatory or in bad faith. There is no dispute that the Union pursued Plaintiff's grievance through all the grievance levels identified in the CBA, including the local level hearing, and the State Panel hearing. Plaintiff admits as much. (Pl. Resp. Br. at 6). Plaintiff merely alleges that the Union breached its duty of fair representation by failing "to argue that Defendant's anti-harassment policy may not be enforced through Article 17," and by failing "to counsel Plaintiff that an act of contrition would satisfy Defendant's unwritten policy regarding return to work after an Article 17 termination." (Compl. ¶¶ 45-46).

Plaintiff's disagreement with the Union as to whether or not the anti-harassment policy could be enforced through Article 17(i) of the CBA is not sufficient to show breach of the

duty of fair representation. *See Deringer v. Columbia Transp. Div., Oglebay Norton*, 866 F.2d 859, 864 (6th Cir. 1989) (holding that employee's difference of opinion with Union on interpretation of CBA was not sufficient to allow unfair representation claim to go to jury). No reasonable jury could find that the Union's failure to raise this issue was outside the wide range of reasonableness accorded the Union in light of the unrebutted evidence that both the Union and the Employer agreed that violations of the anti-harassment policy could be enforced through Article 17(i) of the CBA, other employees had been discharged pursuant to Article 17(i) for violations of the anti-harassment policy, and the state Panel upheld Plaintiff's discharge under Article 17(i). (Parker Dep. at 12-18; Brockhaus Dep. at 16-20; Def. Resp. to Interrog. # 7).

    Neither is the Union's failure to counsel Plaintiff that an act of contrition would satisfy an unwritten policy of allowing a return to work sufficient to show a breach of the duty of fair representation. As an initial matter, the Court notes that the evidence reflects that the Union did in fact discuss with Plaintiff the benefits of apologizing for his actions, but that Plaintiff adamantly maintained that he did nothing wrong that would warrant an apology. (Parker Aff. at 2; Parker Dep. at 44). The evidence also reflects that Plaintiff had an opportunity to talk before the State Panel but chose not to add anything. (Tr. of St. Panel at 7). Plaintiff does not refute this evidence. He merely contends that he was not informed that an apology was all that was necessary to escape the severe sanction of termination. Plaintiff's only evidence of the existence of such a policy is evidence that another employee

7

who apologized was allowed to return to work after a discharge.  However, this evidence reveals that the employee was not similarly situated to Plaintiff.  That employee showed remorse and independently went to the victim prior to his termination to apologize. (Brockhaus Dep. at 48-50, 55-56).

Moreover, to the extent Plaintiff asserts that the Union somehow failed him by not telling him that he could avoid termination by apologizing, the evidence at best reflects ordinary negligence or a mistake in judgment, neither of which is sufficient to support his breach of the duty of fair representation claim.  "[M]ere negligence or poor judgment on the part of the union will not support a claim of unfair representation."  *Black v. Ryder/P.I.E. Nationwide, Inc*., 15 F.3d 573, 584 (6th Cir. 1994).

The Court is satisfied that Plaintiff has failed to come forward with evidence to create an issue of fact on a breach of the duty of fair representation, and that Defendant is entitled to summary judgment.

Defendant is also entitled to summary judgment on a second independent basis. Plaintiff's complaint is barred by the six-month statute of limitations that applies to hybrid § 301 claims.  Although there is no express statute of limitations under § 301, the Supreme Court has held that the six-month statute of limitations period found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), which governs unfair labor practices before the NLRB, applies to hybrid § 301 claims.  *DelCostello v. Teamsters*, 462 U.S. 151, 171-72 (1983).

The Sixth Circuit has also applied the six-month § 10(b) statute of limitations to a straight § 301 claim in *Woosley v. Avco Corp.*, 944 F.2d 313 (6th Cir. 1991). *Woosley* involved employees' claims to entitlement to a particular type of job under a collective bargaining agreement. The question was subject to resolution through the grievance mechanism of a collective bargaining agreement. The Sixth Circuit applied the § 10(b) federal statute of limitations to promote the federal policy of resolving collective bargaining disputes through grievance and arbitration, and because the suit involved day-to-day employment and grievance issues. *Id.* at 318.

Although the § 10(b) six-month statute of limitations indisputably applies to hybrid § 301 claims, the Sixth Circuit has recognized that it does not apply to every action in which labor law is at issue. *Woosley*, 944 F.2d at 318. For example, state statutes of limitations are generally applied to § 301 suits that are not of the "hybrid" variety. *Cummings v. John Morrell & Co.*, 36 F.3d 499, 504 (6th Cir. 1994). *See, e.g.*, *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1216 (6th Cir. 1987) (holding that subcontractor's action against union for inducement of breach of contract subject to state three-year statute of limitations); *Central States Southeast & Southwest Areas Pension Fund v. Kraftco, Inc.*, 799 F.2d 1098 (6th Cir. 1986) (en banc) (holding that pension fund's § 301 suit against employer alleging breach of CBA by failing to make required payments into pension fund was subject to state contracts statute of limitations).

9

Plaintiff has attempted to avoid the six-month statute of limitations by arguing that his claim is not a hybrid § 301 claim because he did not sue the Union. He contends that his action against his employer seeks damages for breach of contract, and as such is subject to Michigan's six-year limitations period governing breach of contract claims. M.C.L. § 600.5807(8).

Plaintiff's argument is without merit. An employee is generally bound by the exclusive remedies provided in the CBA unless he can show both that the union breached the CBA and that the union breached its duty of fair representation. This is known as the hybrid § 301 claim. *DelCostello*, 462 U.S. at 164-65. Plaintiff cannot avoid the characterization of his claim as a hybrid § 301 claim by suing only the employer. "In a hybrid § 301 suit, an 'employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.'" *Vencl v. International Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 425 (6th Cir. 1998) (quoting *DelCostello*, 462 U.S. at 165).

Plaintiff's action is a classic hybrid § 301 claim involving day-to-day employment and grievance issues. The six-month statute of limitations accordingly applies to his action. Plaintiff was terminated on January 30, 2004, and his final hearing before the state panel was on February 19, 2004. Plaintiff did not file this action until August 30, 2005, well beyond the limitations period. His action is clearly time-barred. Accordingly, for this reason as well, Defendant's motion for summary judgment will be granted.

In light of the fact that this Court has already found two independent and alternative bases for granting summary judgment in favor of Defendant, the Court declines to address the other arguments presented. In addition, in light of the disposition of Defendant's motion for summary judgment, Defendant's motion to stay pending resolution of the motion to dismiss and/or for summary judgment will be denied as moot.

An order and judgment consistent with this opinion will be entered.

Date:      March 13, 2006              /s/ Robert Holmes Bell
                                                        ROBERT HOLMES BELL
                                                        CHIEF UNITED STATES DISTRICT JUDGE